IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Eric M. Lewis and Scott Lewis, | ) |
|                 Plaintiffs, | ) C.A. No. 8:15-4792-HMH )<br>) **OPINION & ORDER** |
| vs. | ) ) |
| Kinder Morgan Energy Partners, L.P.;<br>Kinder Morgan Management, LLC;<br>Kinder Morgan, Inc.; Kinder Morgan<br>G.P., Inc.; and Plantation Pipe Line<br>Company, Inc., | )<br>)<br>)<br>)<br>) |
|                 Defendants. | )<br>) |

This matter is before the court on Defendants Kinder Morgan Energy Partners, L.P., Kinder Morgan Management, LLC, Kinder Morgan, Inc., Kinder Morgan G.P., Inc. (collectively "Kinder Morgan") and Plantation Pipe Line Company, Inc.'s ("PPL") motion for partial summary judgment or, alternatively for a bifurcated trial. After consideration, the court denies the Defendants' motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This is an action arising out of a petroleum leak from an underground pipeline ("Pipeline") on Plaintiffs Eric and Scott Lewis' property, which is located in Anderson County, South Carolina near Belton, South Carolina ("Property"). PPL owns and operates the 3,100 mile pipeline that originates in Louisiana and ends in Washington, D.C. (Defs. Mem. Supp. Partial Summ. J. 2, ECF No. 91-1.) Kinder Morgan's pipeline network is over 84,000 miles of pipeline. (Compl. ¶ 2, ECF No. 1-1.) PPL is owned and operated by Kinder Morgan. (Id. ¶ 7, ECF No. 1-1.) The Pipeline is located on the Defendants' easement on the Property. (Defs.

1

Mem. Supp. Partial Summ. J. 6, ECF No. 91-1.) In December 2014, a leak caused by the failure of a patch over a dent was discovered on a section of the Pipeline located on the Property. (Id. at 2, ECF No. 91-1.) The leak resulted in a discharge of an estimated 369,000 gallons of petroleum. (Id., ECF No. 91-1.) The Pipeline leak was repaired within a few days of discovering the leak and remediation efforts commenced. (Id., ECF No. 91-1.)

The Plaintiffs instituted this action on November 5, 2015, in state court alleging claims for negligence, trespass, punitive damages, and injunctive relief. The Plaintiffs allege that the petroleum leak has permanently impaired the Property. The Defendants removed the case to this court.

On March 30, 2017, the Defendants filed the instant motion requesting that the court:

> (1) dismiss Plaintiffs' claims to the extent they relate to the 1990 dent repair [based on the 13-year statute of repose set forth in S.C. Code § 15-3-640]; (2) dismiss Plaintiffs' claim for punitive damages or, alternatively, order that the trial in this case be bifurcated for purposes of liability and damages; and (3) limit Plaintiffs' recovery to the depreciation in the rental or usable value of the Lewis Property caused by the petroleum impacts to the Lewis Property.

(Mot. Partial Summ. J., ECF No. 91.) The Plaintiffs filed a response in opposition on April 13, 2017. (Resp. Opp'n Mot. Partial Summ. J., ECF No. 93.) On April 25, 2017, the Defendants replied. (Reply, ECF No. 98.) This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Partial Summary Judgment Standard

Partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note (1946). A motion for partial summary judgment is judged by the same standard as a full motion for summary judgment. In re Boston Sci. Corp., Pelvic Repair Sys. Prods. Liab. Litig.,

No. 2:12-cv-00904, 2015 WL 1527678, at *1 (S.D. W. Va. Apr. 2, 2015) (unpublished). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. Cty. of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Discussion of the Law

#### 1. 1990 Dent Repair Claims

The Defendants argue that the Plaintiffs' claims that the Defendants were negligent with respect to the 1990 dent repair are barred by the 13-year statute of repose set forth in S.C. Code

Ann. § 15-3-640.[1] (Defs. Mem. Opp'n Mot. Partial Summ. J. 4, ECF No. 91-1.) Section 15-3-640 provides in pertinent part:

> [n]o actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than thirteen years after substantial completion of the improvement. For purposes of this section, an action based upon or arising out of the defective or unsafe condition of an improvement to real property includes:
> (1) an action to recover damages for breach of a contract to construct or repair an improvement to real property;
> (2) an action to recover damages for the negligent construction or repair of an improvement to real property;
> (3) an action to recover damages for personal injury, death, or damage to property;
> (4) an action to recover damages for economic or monetary loss;
> (5) an action in contract or in tort or otherwise;
> (6) an action for contribution or indemnification for damages sustained on account of an action described in this subdivision;
> (7) an action against a surety or guarantor of a defendant described in this section;
> (8) an action brought against any current or prior owner of the real property or improvement, or against any other person having a current or prior interest in the real property or improvement;
> (9) an action against owners or manufacturers of components, or against any person furnishing materials, or against any person who develops real property, or who performs or furnishes the design, plans, specifications, surveying, planning, supervision, testing, or observation of construction, or construction of an improvement to real property, or a repair to an improvement to real property.
>
> This section describes an outside limitation of eight years after the substantial completion of the improvement, within which normal statutes of limitations continue to run.

---

[1] "Section 15-3-640 was amended in 2005 and now contains an outside limitation of eight years in which to file suit." Capco of Summerville, Inc. v. J.H. Gayle Const. Co., 628 S.E.2d 38, 41 n.1 (S.C. 2006). The 2005 amendment substituted "eight years" for "thirteen years" and made nonsubstantive language changes with the exception of adding a paragraph relating to a certificate of occupancy as proof of substantial completion of an improvement project. The Defendants do not dispute that the pre-amendment version of the statute governs the legal issues in this case. Further, the 2005 amendment only applies to "improvements to real property for which certificates of occupancy are issued by a county or municipality or completion of a final inspection by the responsible local building official after the effective date" of July 1, 2005. 2005 South Carolina Laws Act 27 (H.B. 3008).

S.C. Code Ann. § 15-3-640 (2005).

The South Carolina Supreme Court has found that a pipeline "is an improvement to the real property under which it lies for purposes of § 15-3-640." S.C. Pipeline Corp. v. Lone Star Steel Co., 546 S.E.2d 654, 656 (S.C. 2001). The court held that the pipeline was an "improvement to real property" because it "unquestionably made the easement more valuable to [the plaintiff pipeline company]; it involved the investment of labor and money; and it was permanent as that phrase is commonly understood–it had been in place for 38 years when the explosion occurred." Id. at 657 (internal footnote omitted). Further, in South Carolina Pipeline, the court held that an "easement is real property." Id. at 656. However, the inquiry does not end here. There is no question that the Pipeline is an improvement which made the Defendants' easement more valuable, but the issue remains whether section 15-3-640 applies to the case at bar.

The Plaintiffs submit that the limitations set forth in S.C. Code Ann. § 15-3-670(A) bar application of section 15-3-640 to this case. (Resp. Opp'n Mot. Partial Summ. J. 5, ECF No. 93.) S.C. Code Ann. § 15-3-670(A) provides that

> [t]he limitation provided by Sections 15-3-640 through 15-3-660 may not be asserted as a defense by a person in actual possession or control, as owner, tenant, or otherwise, of the improvement at the time the defective or unsafe condition constitutes the proximate cause of the injury or death for which it is proposed to bring an action, in the event the person in actual possession or control knows, or reasonably should have known, of the defective or unsafe condition.

The parties do not cite to any case law interpreting the limited ownership exception in section 15-3-670(A). The South Carolina Court of Appeals has directly addressed this issue in an unpublished decision, Bundrick v. East Richland County Public Service District, No. 2005-UP-225, 2005 WL 7083866, at *3 (S.C. Ct. App. Mar. 31, 2005) (per curiam) (unpublished).

5

Although Bundrick is an unpublished opinion with no precedential value, the court finds that this case has persuasive value as it is factually analogous to the case at bar and involves interpretation of the ownership exception in section 15-3-670(A). In Bundrick, the plaintiffs owned real property and the defendant owned an easement running through the property for a sewer line. 2005 WL 7083866, at *1. After building a house on the property in 1986, the plaintiffs experienced soil erosion and structural problems with the house. Id. The plaintiffs alleged that an aluminum pipe running near the sewer line had caused these problems. Id. The South Carolina Court of Appeals held as follows:

> There is no dispute the District owns the easement, which is real property. The District acknowledges its ownership of the sewer lines. However, the District presented evidence at trial that denied it or its contractors installed or owned the aluminum pipe.
>
> It is the aluminum pipe that is the "improvement" alleged to have caused the Bundricks' damages. Therefore, it is the ownership of the defective aluminum pipe that would trigger the section 15-3-670 exception. Only if the District owned the aluminum pipe would it be barred from asserting the statute of repose as a defense.
>
> In finding against the Bundricks, the master rejected their argument that the District owned the aluminum pipe, which they allege was the culprit. There is evidence in the record to support the master's conclusion that the District did not own the defective aluminum pipe. Accordingly, the District is not barred by section 15-3-670 from asserting the statute of repose as a defense.

Id. at *3. In addition, the preamble to the 1986 Act revising section 15-3-640 states:

> Whereas, the General Assembly finds it reasonable and necessary to distinguish between a person in actual possession or control of an improvement to real property and those otherwise involved in an improvement to real property, for the following reasons: because acceptance of some future responsibility for the condition of the premises is implied in the acceptance of an improvement to real property; because possession or control of the premises is a reasonable and fair basis for imposing some additional liability; because after the date of acceptance of the work by the owner, there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an

improvement; because owners and persons in control have the opportunity to avoid liability by taking care of the improvement and by regulating its use . . . .

Snavely v. Perpetual Fed. Sav. Bank, 412 S.E.2d 382, 384-85 (S.C. 1991) (quoting Act No. 412 of 1986).

In the case at bar, the Defendants own the easement containing the Pipeline that runs through a portion of the Plaintiffs' Property. (Defs. Mem. Supp. Partial Summ. J. 6, ECF No. 91-1.) Further, unlike in Bundrick, it is undisputed that the Defendants own the Pipeline, which is the improvement. (Id. at 2, ECF No. 91-1.); 546 S.E.2d at 656. As owner of the Pipeline, it is within the complete control of the Defendants and the Defendants are solely responsible for the maintenance and management of the Pipeline. The Defendants own the Pipeline and the easement where the Pipeline is located, and the Plaintiffs submit that the Defendants have damaged their property because the Pipeline has been repaired, managed, and maintained in a defective and unsafe condition.

Specifically, in pertinent part, the Plaintiffs' expert, Richard B. Kuprewicz ("Kuprewicz"), opines in his expert report that the 1990 sleeve repair "was performed negligently and deficiently." (Resp. Opp'n Mot. Partial Summ. J. Ex. 1 (Kuprewicz Report ¶ 1a), ECF No. 93-1.) Kuprewicz states that PPL was "negligent in failing to perform further inspections and analysis, including field inspection of the 1990 sleeve repair, prior to its December 8, 2014 failure at Lewis Farm." (Id. Ex. 1 (Kuprewicz Report ¶ 1c), ECF No. 93-1.) Further, Kuprewicz states that Kinder Morgan failed to conduct due diligence and "comply with integrity management regulations concerning previous repairs . . . that should have raised concerns within the company about the adequacy of many previous threats and their sleeve repairs on the

Plantation Pipeline" when it acquired controlling interest of PPL in 1999. (Id. Ex. 1 (Kuprewicz Report ¶ 2), ECF No. 93-1.)

The Defendants contend that the "Plaintiffs have not produced any evidence from which a jury could conclude that Defendants knew, or should have known, about the alleged defective repair that was conducted in 1990 prior to the release in 2014." (Reply 3, ECF No. 98.) The court disagrees. The Plaintiffs have adequately come forward with evidence at the summary judgment stage to raise a genuine issue of material fact regarding whether the Defendants knew or should have known of the alleged defective and unsafe condition of the Pipeline with respect to the 1990 dent repair. Based on the foregoing, section 15-3-670(A) prevents the Defendants from asserting the statute of repose set forth in section 15-3-640 as a defense with respect to the 1990 Dent Repair. Therefore, the Defendants' motion for partial summary judgment is denied on this claim.[2]

### B. Punitive Damages

The Defendants allege that the Plaintiffs cannot show any evidence of punitive damages by clear and convincing evidence in this case. (Defs. Mem. Supp. Partial Summ. J. 7, ECF No. 91-1.)

> In order for a plaintiff to recover punitive damages, there must be evidence the defendant's conduct was willful, wanton, or in reckless disregard of the plaintiff's rights. A tort is characterized as reckless, willful or wanton if it was committed in such a manner or under such circumstances that a person of ordinary reason and prudence would have been conscious of it as an invasion of the plaintiff's rights. A conscious failure to exercise due care constitutes willfulness. The plaintiff has the burden of proving punitive damages by clear and convincing evidence.

---

[2] The court declines to address the Plaintiffs' remaining arguments in opposition to the Defendants' motion for partial summary judgment based on the statute of repose.

Taylor v. Medenica, 479 S.E.2d 35, 46 (1996) (internal citations omitted); S.C. Code Ann. § 15-33-135.  Clear and convincing evidence is regarded as "evidence . . . of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) (quotations and citations omitted).

Viewing the facts in the light most favorable to the Plaintiffs, there is sufficient evidence on which a jury could find that the Defendants acted willfully, wantonly, or recklessly with respect to the 1990 sleeve repair and maintenance and management of the Pipeline.  Therefore, as to punitive damages, summary judgment is denied.

In the alternative, the Defendants request that the court bifurcate the trial into two phases, one for liability and one for damages.  (Defs. Mem. Supp. Partial Summ. J. 9, ECF No. 91-1.)  Rule 42(b) of the Federal Rules of Civil Procedure provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues . . . ."  In exercising its powers under Rule 42(b), the district court is permitted "considerable discretion" and "the exercise of that discretion will be set aside only if clearly abused." Sentry Select Ins. Co. v. Guess Farm Equip., Inc., Civil Action No. 5:12-03504-JMC, 2013 WL 5797742, at *4 (D.S.C. Oct. 25, 2013) (unpublished) (citing Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993)).  "Notwithstanding the broad discretion conferred by Rule 42(b), the party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice

to any party." Id. After review of the record, none of these factors support bifurcation in this case. Thus, the Defendants' motion to bifurcate is denied.

## C. Temporary Damage to Property

The Defendants argue that the Plaintiffs have only suffered temporary damages to the Property as a matter of law, and therefore, the Plaintiffs are only entitled to recover damages for loss of use during the time period that the Property remains damaged. (Defs. Mem. Supp. Partial Summ. J. 11, ECF No. 91-1.) In Yadkin Brick Co., Inc. v. Materials Recovery Co., the South Carolina Court of Appeals held that the plaintiff failed to establish permanent injury from environmental contamination where there was no expert testimony "that the property could not be adequately cleaned up or that the contamination would result in permanent injury. . . ." 529 S.E.2d 764, 767-68 (S.C. Ct. App. 2000). The plaintiff in Yadkin had sought to recover damages for diminution of property value due to environmental contamination of the plaintiff's property. Id. at 767.

In the case at bar, there is conflicting testimony regarding the duration of the clean up of the Property and therefore there is a question of fact "as to whether damages should be categorized as permanent or temporary." AVX Corp. v. Horry Land Co., Inc., 686 F. Supp. 2d 621, 626 (D.S.C. 2010) (denying motion for summary judgment on issue of temporary damages in a case involving ongoing remediation where there was conflicting evidence regarding whether the property could ever be cleaned up). In AVX Corp., the plaintiff's expert alleged that the property could be cleaned up in five years and the defendant's expert alleged that it was "not possible to determine a fixed time period in which the contamination" could be cleaned up. Id.

In the instant case, the Plaintiffs' expert, David L. Hargett, Ph.D ("Dr. Hargett"), has indicated in his expert report that the contamination from the pipeline leak is "likely to continue indefinitely into the future." (Resp. Opp'n Mot. Partial Summ. J. Ex. 9 (Hargett Report ¶ 27), ECF No. 93-9.) Dr. Hargett's report states as follows:

> My review of this case and this site includes review of the proposed Corrective Action Plan . . . dated September 1, 2016. Based upon my review of the information submitted to me, and my knowledge and experience, as well as the huge amount of product reportedly released and the huge amount of product still unaccounted for, it is most likely that significant levels of hazardous COCs will persist on the Lewis property indefinitely into the future, and for an indefinite period of time. These hazardous constituents adversely affect the soil, groundwater and surface water on the Lewis property, and the vapor conditions adversely affect air quality.

(Id. Ex. 9 (Hargett Report ¶ 26), ECF No. 93-9.) In contrast, the Defendants' expert, Thomas Hutton, opines that remediation will be achieved "within approximately 10 years." (Defs. Mem. Supp. Partial Summ. J. Ex. B (Hutton Opinions), ECF No. 91-3.) The spill in this case was a large release of approximately 369,000 gallons of petroleum. The Defendants have only recaptured approximately 215,000 gallons to date. (Resp. Opp'n Mot. Partial Summ. J. Ex. 7 (Jan. 2017 Status Update), ECF No. 93-7.) Thus, significant contaminants remain on the Plaintiffs' property. After review of the record in this case, genuine issues of material fact exist regarding whether the contamination is temporary or permanent. Therefore, the Defendants' motion for summary judgment on this issue is denied.

It is therefore

**ORDERED** that the Defendants' motion for partial summary judgment or, alternatively for a bifurcated trial, docket number 91, is denied.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.<br>Senior United States District Judge

Greenville, South Carolina
April 28, 2017